

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| In re: | ) | | |
|---|---|---|---|
| | ) | | |
| SHARRELL D. REED, | ) | Case No. | 16-12995-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on February 25, 2020 on the *Second Motion for Citation of Contempt* (the "Motion") (Dkt. # 71) filed by the debtor, Sharrell D. Reed.  At issue is whether the United States Department of Education should be, for a second time, held in willful contempt of the automatic stay.  It should.  The Motion is due to be granted and the debtor is entitled to compensatory damages.

1

# I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (O).

# II. FACTS & PROCEDURAL HISTORY[1]

The debtor filed this case on August 31, 2016 (Dkt. # 1).[2] Her chapter 13 plan was confirmed January 17, 2017 and included student loan debt owed to the United States Department of Education (the "Department") (Dkt. # 36). The debtor's student loan servicers are FedLoan Servicing and Navient, two of ten servicers owned by the Department.[3]

The debtor filed her first *Motion for Citation of Contempt* on November 29, 2018 (Dkt. # 59). There, she alleged that the Department, "[d]espite full knowledge of the bankruptcy proceeding. . . continued to contact and threaten [her] while demanding payment" *Id*. The debtor did not seek monetary damages, but instead requested that the Department simply comply with the automatic stay (Dkt. # 59), which it was already required to do. A hearing was

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[2] At that point, the automatic stay came into full force and effect. *See* 11 U.S.C. § 362(a).
[3] *See* Federal Student Aid, *Who's My Student Loan Servicer?,* https://studentaid.gov/manage-loans/repayment/servicers.

held on February 13, 2019 where Tracy Walsh appeared for the debtor and Assistant U.S. Attorney Sam Wright appeared for the Department. After hearing testimony and considering the evidence, this Court found the Department ". . . in willful contempt for its repeated violation [of] the automatic stay provisions of the Bankruptcy Code" and ordered the Department "to immediately cease any and all communications with the Debtor. . ." (Dkt. # 67).

Despite the existence of the automatic stay and this Court's contempt order, the debtor received two additional letters from the Department in July and December 2019. In the December 2019 letter, the Department threatened to garnish the debtor's wages. In response, the debtor filed this Motion on January 8, 2020 (Dkt. # 71). A hearing was held on February 25, 2020. Tracy Walsh and Sam Wright again appeared. At the hearing, the debtor testified that she received the July and December 2019 letters. Ms. Walsh noted that she faxed a copy of the first contempt order to the Department in July 2019 (Debtor's Ex. # 1-A). The debtor further testified that she received a third letter from the Department dated January 23, 2020. The day of the hearing, the debtor was informed that her wages at both of her jobs had been garnished by the Department.

The Department called no witnesses; however, Mr. Wright represented to the Court that he made multiple attempts to inform the Department of the ongoing stay violation via fax and email. Mr. Wright further informed the

3

Court that the Department acknowledged receipt of the first contempt order on January 27, 2020. Otherwise, the Department presented no defense.

The February 13, 2019 and February 25, 2020 hearings required the debtor to miss work. The debtor testified that she earns $12.63 per hour at the Olive Branch Elementary School and $18.00 per hour at the YMCA. The debtor traveled from Southaven, Mississippi to Oxford, Mississippi in her personal vehicle for each hearing, 64.3 miles each way. The Debtor testified that she missed a total of six hours of work for each hearing – three hours from Olive Branch Elementary School and three hours from the YMCA. At the February 25, 2020 hearing, Ms. Walsh presented evidence that she had billed the debtor a total of $3,900.00 for the stay violation issue. At the time of trial, the Court entered an order stopping the wage garnishments (Dkt. # 75), leaving the issue of damages for further consideration.

### III. CONCLUSIONS OF LAW

A. Sovereign Immunity

At the outset, it is important to note that the Department is not protected by sovereign immunity. While "[s]overeign immunity shields the United States from suit," Congress may abrogate sovereign immunity.[4] Such an

---

[4] *Hunsaker v. United States*, 902 F.3d 963, 966 (9th Cir. 2018).

4

abrogation must be made "unmistakably clear in the language of the statute."[5]

11 U.S.C. § 106(a) reads, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to. . . [Section]. . . 362. . . ."[6] The Code defines "governmental unit" as a "United States. . . *department*, agency, or instrumentality. . . ."[7] The Department and its servicers in this case are governmental units as defined in § 101(27), and § 106(a) unmistakably abrogates the Department's sovereign immunity. Therefore, the Department does not enjoy sovereign immunity in this case.[8]

### B. The Automatic Stay

The Department repeatedly and willfully violated the automatic stay. 11 U.S.C. § 362(a) provides, "a petition filed under. . . this title. . . operates as a stay, applicable to all entities, of. . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this

---

[5] *Hoffman v. Connecticut Dep't of Income Maint.*, 492 U.S. 96, 101 (1989) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985)).
[6] 11 U.S.C. § 106(a)(1).
[7] 11 U.S.C. § 101(27) (emphasis added).
[8] FedLoan Servicing and Navient are instrumentalities of the Department as contemplated by § 101(27). FedLoan "was established to support the U.S. Department of Education's ability to service student loans owed by the federal government." *See generally* FedLoan Servicing, *Who We Are,* https://myfedloan.org/general/about/who-we-are. Navient is "one of a select group of companies chosen to service student and parent federal loans for the U.S. Department of Education." *See generally* Navient, *About,* https://about.navient.com/products-and-services. See *also Instrumentality*, BLACK'S LAW DICTIONARY (7th ed. 1999).

title."⁹  The automatic stay guarantees "breathing room" for the debtor and "prevents creditors from pursuing collection efforts against the debtor for pre-petition debts."¹⁰  If a creditor willfully violates the stay, then the debtor may be entitled to damages.

The Fifth Circuit has established a three-pronged test to determine a "willful" violation of the automatic stay: "(1) [the creditor] must have known of the existence of the stay; (2) [the creditor's] acts must have been intentional; and (3) [the creditor's] acts must have violated the stay."¹¹  The first prong is satisfied because the Department had ample knowledge of the pendency of the debtor's bankruptcy and, therefore, the automatic stay.¹²  The debt was included in the confirmed plan (Dkt. # 36).  Multiple notices were sent to the Department, including notice from the Assistant U.S. Attorney, which the Department acknowledged.  The second prong is met because the Department's acts were intentional.  A showing of the Department's specific intent is not required, "[r]ather, [Section 362] provides for damages upon a finding that [the creditor] knew of the automatic stay and [the creditor's] actions which violated

---

⁹ *In re Jones*, No. 18-02837-NPO, 2019 WL 5061166, at *2 (Bankr. S.D. Miss. July 22, 2019) (citing 11 U.S.C. § 362(a)).
¹⁰ *Id.* (citing *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005); *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008)).
¹¹ *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008).
¹² *See supra* note 2.  Further, both FedLoan Servicing and Navient were listed on the debtor's creditor matrix (Dkt. # 10-2), served with the plan (Dkt. # 10), notified of the meeting of creditors (Dkt. # 19), and served with the debtor's confirmed plan (Dkt. ## 36, 37).  FedLoan Servicing was properly served with the debtor's first *Motion for Citation of Contempt* (Dkt. ## 59, 62) and the Department itself was properly served with this Motion (Dkt. ## 71, 73).

the stay were intentional."[13] Intentionality is established when "the creditor intended to do the actions done, at a point in time when the creditor knew of the bankruptcy."[14] The Department sent the letters when, as established above, it knew of the debtor's bankruptcy status. Even after acknowledging receipt from Mr. Wright, the Department initiated garnishments. The third prong is also met. Section 362(a)(6) prohibits creditors from engaging in "any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case. . . ." The Department's letters explicitly state, in bold type, "THIS IS AN ATTEMPT TO COLLECT A DEBT. . ." (Debtor's Ex. # 1). Further, the garnishments are clearly a debt collection attempt. The three-pronged test established by the Fifth Circuit is satisfied.[15] The Department willfully violated the automatic stay.

### C. Contempt of Court

A violation of the automatic stay may be punishable as contempt of court.[16] Section 105(a) gives bankruptcy courts "the inherent power to enter civil contempt orders for violations of the court's specific orders and injunctions."[17] "A movant in a civil contempt proceeding bears the burden of

---

[13] *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008).
[14] *In re Medina*, 413 B.R. 583, 590 (Bankr. W.D. Tex. 2009).
[15] *See supra* note 11.
[16] *Collier on Bankruptcy* ¶362.12[2], p. 362-140 (16th ed. 2020) (citing *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996)).
[17] *In re Musslewhite*, 270 B.R. 72, 78 (S.D. Tex. 2000) (citing *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997)).

7

establishing by clear and convincing evidence: (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."[18]  The record is clear that the first contempt order was in effect directing the Department "to immediately cease any and all communication with the Debtor regarding the collection of any indebtedness owed" (Dkt. # 67).  Undeterred by this Court's order and the advice of Mr. Wright, the Department continued to attempt to collect the debt.  The Department is in contempt of both the Court's order (Dkt. # 67) and the automatic stay.

### D. Damages

Civil contempt is used to compensate a party that has "suffered unnecessary injuries or costs because of contemptuous conduct."[19]  "[T]he damages available under § 362(k) include the compensatory damages a debtor can recover in an action for contempt of court."[20]  "[A] debtor who successfully proves all three. . . elements of a willful violation of the automatic stay may recover actual damages" pursuant to § 362(k).[21]  Damages pursuant to § 362(k)

---

[18] *Id.* at 79 (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)).
[19] *Id.* at 78 (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 962 (5th Cir. 1995)).
[20] *In re Adams*, 516 B.R. 361, 369-70 (Bankr. S.D. Miss. 2014).
[21] *Id.* at 369. *See also supra* Section B.

must be proven with "reasonable certainty and may not be speculative or based on conjecture."[22]

At the February 25, 2020 evidentiary hearing, the debtor testified with specificity to her hourly wages and travel time. The debtor earns $12.63 per hour at the Olive Branch Elementary School and $18.00 per hour at the YMCA. She was absent a total of six hours for the February 13, 2019 and February 25, 2020 hearings, three hours from each job. The Debtor is entitled to $183.78 in lost wages. To attend the hearings, the debtor traveled a total of 259.60 miles. The Debtor is entitled to $149.27 in mileage.[23]

The debtor is also entitled to reasonable attorney's fees. "A debtor may recover reasonable attorney's fees and expenses incurred in prosecuting a § 362(k) action."[24] In the Fifth Circuit, courts utilize both the "lodestar method" and *Johnson* factors in determining whether attorneys' fees are reasonable. "A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community."[25] It may then adjust the rate up or down

---

[22] *Id.* at 370 (citing *In re Clayton*, No. 08-37108, 2010 WL 4482810, at *2 (Bankr. S.D. Tex. Oct. 29, 2010)).
[23] The debtor is compensated for her mileage at the federal rate, 57.5 cents. *See* IRS, *Standard Mileage Rates,* https://www.irs.gov/tax-professionals/standard-mileage-rates.
[24] *In re Adams,* 516 B.R. at 373 (citing *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008)).
[25] *In re Cahill*, 428 F.3d 536, 540 (5th Cir. 2005) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir.1993)).

pursuant to § 330 and in light of the *Johnson* factors.[26] The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[27]

Ms. Walsh presented evidence that from December 11, 2017 to February 24, 2020, she spent 13 hours on the debtor's case (Debtor's Ex. # 1). Ms. Walsh's billable rate is $300.00, which is a reasonable rate for an attorney of Ms. Walsh's expertise and reputation. Further review of the *Johnson* factors makes clear that no adjustment to the lodestar is warranted in this case. The Court finds that $3,900.00 in attorney's fees is an appropriate award. Although the Department's actions warrant punitive damages, § 106(3) prevents that award.[28]

---

[26] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *overruled on other grounds* by *Blanchard v. Bergeron*, 489 U.S. 87 (1989).
[27] *Johnson,* 488 F.2d at 717-19 (formatting from *In re Adams,* 516 B.R. at 372).
[28] Section 106(3) reads, in part: "The Court may issue against a governmental unit an order, process, or judgment. . . including an order of judgment awarding a money recovery, *but not including an award of punitive damages*" (emphasis added).

10

## IV. CONCLUSION

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED** that the Motion (Dkt. # 71) is **GRANTED** and the debtor is **AWARDED** $4,231.67 in total compensatory damages. The Department is, once again, **ORDERED** to immediately cease any and all communication with the Debtor regarding the collection of any indebtedness owed.

## ## END OF ORDER ##